**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS RINKER and** | **:** | |
| **MICHELLE RINKER,** | | |
| | **:** | **CIVIL ACTION NO. 3:15-1293** |
| **Plaintiffs** | | |
| | **:** | **(JUDGE MANNION)** |
| **v.** | | |
| | **:** | |
| **SCOTT AMORI, ESQ.,** *et al.,* | | |
| | **:** | |
| **Defendants** | | |

## <u>MEMORANDUM</u>

Pending before the court are the defendants' motions to dismiss the plaintiffs' second amended complaint, (Doc. 40), pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). (Doc. 43, Doc. 45). Plaintiffs allege claims of professional negligence, breach of contract, and loss of consortium based upon defendants' legal representation in a mortgage foreclosure action and related proceedings. Based upon the court's review of the relevant documents, the court will **GRANT IN PART** Amori defendants' motion, and it will **GRANT IN PART** the motion of defendant Marsh since it finds that some of Mr. Rinker's claims can proceed against all defendants at this stage of the proceedings.

## I.    PROCEDURAL BACKGROUND

The plaintiffs, Thomas Rinker and Michelle Rinker, husband and wife, ("Rinkers"), filed the instant action alleging legal malpractice on June 30, 2015. (Doc. 1). The named defendants were Scott Amori, Esq., the law firm

of Amori & Associates, LLC, (hereinafter "Amori" defendants), and James

Marsh, Esq. John Does 1-10 were also defendants. It was alleged that the

court had subject matter jurisdiction based on diversity of citizenship pursuant

to 28 U.S.C. §1332. Plaintiffs alleged that they resided in New York and that

defendants were citizens of Pennsylvania. On August 7, 2015, defendant

Marsh filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P.

12(b)(6) arguing plaintiffs failed to state a claim for professional negligence

and punitive damages. (Doc. 7). An amended complaint was filed by the

plaintiffs on September 11, 2015. (Doc. 12). The Doe defendants were

terminated since they were not included as parties in the amended complaint.

The court also issued an order and dismissed defendant Marsh's motion to

dismiss plaintiffs' original complaint as moot. (Doc. 13).

On September 15, 2015, plaintiffs filed a Certificate of Merit under

Pa.R.Civ.P. 1042.3.[1] (Doc. 14). Counsel for plaintiffs certified that a licensed

---

[1]Since plaintiffs are raising a professional malpractice claim under
Pennsylvania law against defendants, they were required to file a Certificate
of Merit ("COM") pursuant to Pa.R.C.P. 1042.3(a)(1). A COM is required for
a Pennsylvania professional negligence claim raised in a malpractice action.
*See* Santee v. U.S., Civil Action No. 3:CV-07-2207, Sept. 30, 2008
Memorandum and Order, 2008 WL 4426060 (M.D.Pa.); Frantz v. Fasullo,
2014 WL 6066020(M.D.Pa. Nov. 13, 2014) ("Pennsylvania law requires a
plaintiff alleging legal malpractice to file a certificate of merit."). "The COM
requirement is set forth in a procedural rule, but federal courts exercising
diversity and supplemental jurisdiction have considered it substantive law that
must be applied to claims under Pennsylvania law presented in federal court."
Booker v. U.S., 2009 WL 90129, *3 (citations omitted). The Third Circuit has
held that a COM is a substantive rule and applies when a case is filed in
federal court. *See* Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-
65 (3d Cir. 2011).

professional has supplied a written statement that there is a reasonable basis to conclude that the care, skill or knowledge exercised or exhibited by the defendants in the work alleged in the complaint fell outside of the acceptable professional standards and that this conduct caused the plaintiffs' alleged harm.

On September 30, 2015, defendant Marsh filed a motion to dismiss plaintiffs' amended complaint, (Doc. 15), and a brief in support, (Doc. 16). On November 13, 2015, after default was set aside, Amori defendants filed a motion to dismiss plaintiffs' amended complaint, (Doc. 31), and a brief in support, (Doc. 32). Plaintiffs were granted extensions of time to respond to defendants' motions. On December 15, 2015, plaintiffs filed a second amended complaint ("SAC"). (Doc. 40). Since plaintiffs' SAC was filed with consent of defendants' counsel and it superseded their amended complaint, the court dismissed the motions to dismiss plaintiffs' amended complaint. (Doc. 41).

On December 23, 2015, Amori defendants filed a motion to dismiss plaintiffs' SAC, (Doc. 43). They filed their brief in support with Exhibits on January 6, 2016, (Doc. 44). On January 13, 2016, defendant Marsh filed a motion to dismiss plaintiffs' SAC, (Doc. 45), and a brief in support, (Doc. 46).

After being granted an extension of time, plaintiffs filed their brief in opposition to both motions to dismiss on February 3, 2016. (Doc. 53). Amori defendants filed a reply brief in support of their motion on February 16, 2016. (Doc. 54). Defendant Marsh did not file a reply brief. Both motions to dismiss

3

are ripe for review.

## II.    FACTUAL BACKGROUND

In 2011, Mr. Rinker executed a fee agreement and retained attorney Marsh to represent him in a mortgage foreclosure action he instituted with respect to a commercial property he owned in Monroe County Court of Common Pleas.[2] Marsh was a transactional attorney with extensive experience in business and real estate law and, had represented Mr. Rinker and his family's business since 1969. In 2013, attorney Marsh obtained a judgment in the mortgage foreclosure action in favor of Mr. Rinker. *See* Rinker v. Gilliland, No. 3620 CV 2012,Monroe County C.C.P. After obtaining the judgment in Monroe County, Mr. Rinker discovered that attorney Marsh failed to include a rents provision in his property's mortgage which precluded him from collecting significant rents from his tenants. Before attorney Marsh drafted the property's mortgage, he failed to explain and/or advise Mr. Rinker of any provisions which should be included in the property's mortgage despite the fact that Marsh knew Mr. Rinker had no legal expertise. There was no strategic advantage to exclude a rents provision in the mortgage for Mr. Rinker's commercial property, and the omission was not within Marsh's discretion as an attorney. The lack of a rent provision was an obvious error

---

[2]For  purposes of defendants' motions to dismiss, the court accepts as true all of the facts alleged in plaintiffs' SAC and draws all reasonable inferences in the plaintiffs' favor. *See* Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).

committed by attorney Marsh. As such, plaintiffs allege that attorney Marsh failed to properly advise Mr. Rinker and protect his interests, and that he caused Mr. Rinker damages.

In August 2013, Mr. Rinker retained attorney Amori and entered into a fee agreement with Amori defendants to provide him with legal representation, including paying back taxes owed on his commercial property and to bid on his property at sheriff's tax sale. Mr. Rinker gave Amori $2,000 after he stated that he needed this money to acquire the property back from the sheriff's sale. Mr. Rinker alleges that Amori should have advised him to pay the taxes on his property before the sheriff's sale to prevent the sale. Mr. Rinker alleges that attorney Amori failed to pay the back taxes and failed to attend the sheriff's sale. He also alleged that attorney Amori failed to give him notice of the date of the sheriff's sale of his property. Consequently, Mr. Rinker states that his property was purchased by a third party at a later judicial tax sale. *See* Monroe County C.C.P. No. 453 Civil 2014. Mr. Rinker alleges that attorney Amori then attempted to cover up his negligence by not telling him about the sale of his property. As such, Mr. Rinker alleges that attorney Amori's legal malpractice caused him to lose his $350,000 property and suffer damages as well as severe emotional distress.

Specifically, plaintiffs allege that they lost their 22 year old business of operating a bar/restaurant and apartments. Plaintiffs state that they were unable to pay bills and worried about caring for their children. Plaintiffs were forced to change their lifestyle and Mr. Rinker worked three jobs to pay taxes.

Both plaintiffs allegedly suffered from depression and anxiety as well as emotional distress. Mrs. Rinker was prescribed anti-depression medication and plaintiffs' marriage suffered due to the alleged malpractice.

Plaintiffs assert three counts against all defendants, to wit: Count I, professional negligence, malpractice and negligence; Count II, breach of contract and, breach of covenant of good faith and fair dealing; and Count III, loss of consortium. As relief, plaintiffs seek compensatory damages, including damages for emotional distress, as well as attorney's fees and costs.

## III.   STANDARDS OF REVIEW

### A. Rule 12(b)(6)

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for

enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote

Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### B. Rule 12(b)(1)

Amori defendants' motion also challenge this court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) claiming that Mrs. Rinker lacks standing to bring any claims against them since she was not their client. "A motion to dismiss under Rule 12(b)(1) may take the form of either a facial attack based on the complaint or a factual attack on the basis of subject matter jurisdiction as it pertains to underlying facts." HWI Partners, LLC v. Choate, Hall & Stewart LLP, 2013 WL 6493118, *2 (D.Del. Dec. 11, 2013) (citing Mortensen v. First Federal Sav. and Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1977)). "Dismissal under a facial challenge is proper 'only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 648-49 (E.D.Pa. 2010) (citing Kehr Packages, Inc., 926 F.2d at 1408–09) (quoting Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "In this circumstance, the court must accept all well-pleaded allegations in plaintiff's complaint as true, and must view them in the light most favorable to the non-movant." Id. at 649 (citing In

re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2005)). A factual challenge to jurisdiction, such as the one the Amori defendants raise, is to the actual alleged jurisdictional facts and the court can consider evidence outside the pleadings, including affidavits, depositions and testimony. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997); Mortensen, 549 F. 2d at 891. Also, in a factual attack, the court "is not bound to the presumption of truthfulness as to allegations in a complaint." HWI Partners, 2013 WL 6493118, *2 (citations omitted).

Additionally, "a party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court." Byrne, 684 F.Supp. 2d at 648-49 (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v. Pennsylvania, 188 F.Supp.2d 532, 537 (M.D.Pa. 2002) (citation omitted). "Unlike dismissal under [Fed.R.Civ.P.] 12(b)(6), dismissal under Rule 12 (b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of plaintiff's case, but only a determination of the court lacks the authority to hear the case." Id. (citing Mortensen v. First Federal Sav. and Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1977)).

9

## IV.   DISCUSSION

Initially, since plaintiffs' counsel previously agreed that he would withdraw the claim for punitive damages in the amended complaint and since this claim was in fact omitted in the SAC, plaintiffs' allegation in Count I of the SAC that all defendants breached their duty of care by acting "recklessly" is **STRICKEN** from the SAC. (Doc. 40, ¶ 25). In fact, plaintiffs concede this point and in their brief in opposition voluntarily dismiss their allegation of "recklessness" from their SAC. (Doc. 53 at 6).

Amori defendants raise a factual attack to the subject matter jurisdiction of the court over Mrs. Rinker's claims against them under Rule 12(b)(1). Amori defendants argue that Mrs. Rinker failed to allege any basis for her standing to bring breach of contract and legal malpractice claims against them. They state that they did not have an attorney-client relationship with Mrs. Rinker and that this is a complete bar to her claims. Attorney Marsh likewise argues that Mrs. Rinker's claims against him should be dismissed since they had no privity of contract between them. All defendants point out that Mrs. Rinker was not a party to the underlying mortgage foreclosure litigation in which they were retained to represent Mr. Rinker. Amori defendants attach as Exhibit C to their brief, (Doc. 44), a copy of the mortgage foreclosure complaint and the Praecipe for Entry of Default Judgment filed in Monroe County Court. Mrs. Rinker was not a plaintiff in this action and the only plaintiff listed was Mr. Rinker. The court takes judicial notice of the Monroe County Court complaint showing Mr. Rinker was the sole

plaintiff and the only mortgagee with respect to the mortgage for the commercial property at issue recorded in the Monroe County Recorder of Deeds Office. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). Also, the default judgment in the mortgage foreclosure action was entered in favor of only Mr. Rinker. Attorney Marsh represented Mr. Rinker when the mortgage was prepared for Mr. Rinker's commercial property and when the mortgage foreclosure complaint was filed. Attorney Amori represented Mr. Rinker when the Praecipe for Entry of Default Judgment was filed and after the mortgagors filed bankruptcy. Mrs. Rinker was clearly not a party to the Monroe County Court mortgage foreclosure action. In fact, the allegations contained in the SAC indicate that only Mr. Rinker had agreements with attorney Marsh and attorney Amori to represent him in the mortgage foreclosure action. Also, the August 2013 fee agreement letter attorney Amori signed and sent to Mr. Rinker, indicated that he was going to represent only Mr. Rinker with respect to the foreclosure action. (Doc. 44, Ex. A). Since Amori defendants assert a factual challenge to the court's subject matter jurisdiction over Mrs. Rinker which is based on facts and evidence outside of the SAC, the court can consider the Exhibits attached to their brief. *See* Mortensen, 549 F. 2d at 891.

In Hess v. Fox Rothschild, LLP, 925 A.2d 798 (Pa.Super. 2007), the Pennsylvania Superior Court considered whether the parties had standing to bring a legal malpractice action against an attorney with whom they did not have an attorney-client relationship. The court in Hess, 925 A.2d at 806, held that "[t]o maintain a claim of legal malpractice based on negligence, a plaintiff

11

must show an attorney-client or analogous professional relationship with the defendant-attorney." (citing Guy v. Liederbach, 501 Pa. 47, 51, 58, 459 A.2d 744, 746, 750 (1983); Gregg v. Lindsay, 437 Pa.Super. 206, 649 A.2d 935, 937 n. 1 (1994)). "This general, well-established rule applies to allegations of legal malpractice in any context, ...." Id. (citations omitted). The Pennsylvania courts have recognized an exception to the general rule for "persons who are legatees under a will and who lose their intended legacy due to the negligence of the testator's attorney." Id. (citing Guy, 501 Pa. at 63, 459 A.2d at 752). In such limited cases, the Pennsylvania Supreme Court has allowed the plaintiff to proceed with his suit for breach of contract under a third-party intended beneficiary theory. It is clear that this exception does not apply to Mrs. Rinker.

In their brief in opposition to both motions, plaintiffs state that they "voluntarily dismiss Co-Plaintiff, Michelle Rinker as a party herein." (Doc. 53, at 7). Thus, Amori defendants' motion to dismiss and defendant Marsh's motion to dismiss all of Mrs. Rinker's claims are **GRANTED**. Mrs. Rinker is **DISMISSED WITH PREJUDICE** from this case.

Plaintiffs also state in their brief in opposition that they voluntarily dismiss their claim for emotional distress from their SAC. (Doc. 53 at 6). Thus, this claim is **DISMISSED WITH PREJUDICE**.

Amori defendants and attorney Marsh move to dismiss Mr. Rinker's remaining legal malpractice and breach of contract claims, Counts I and II. No doubt that in Pennsylvania a legal malpractice claim can be brought under a

12

contract theory as well as a tort theory. *See* Frantz v. Fasullo, 2014 WL 6066020, *3 (M.D.Pa. Nov. 13, 2014) ("Under Pennsylvania law, a client may bring both a contract action and a tort action against a professional.") (citations omitted). Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003). In order to establish a breach of contract claim under Pennsylvania law, plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999) (citation omitted); Gorski v. Smith, 812 A.2d 683, 692 (Pa.Super. 2002).

In Sokolsky v. Eidelamn, 93 A.3d 858, 862 (Pa.Super. 2014), the court stated, "[The Pennsylvania] Supreme Court has held that 'a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case').'" (quoting Kituskie v. Corbman, 552 Pa. 275, 714 A.2d 1027, 1030 (1998)). To establish a legal malpractice claim, a plaintiff must satisfy a three-prong test. Id. This test was noted by the Third Circuit in Knopick v. Connelly, 639 F.3d 600, 606 n. 7 (3d Cir. 2011), wherein the court stated that a legal malpractice tort claim in Pennsylvania requires: "(1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and

knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff." (citation omitted). *See also* Kituskie, 714 A.2d at 1029; Sokolsky, 93 A.3d at 862. "Moreover, the plaintiff's damage must be an 'actual loss rather than ... nominal damages, speculative harm or the threat of future harm.'" Sokolsky, 93 A.3d at 862-63 (quoting Kituskie, 714 A.2d at 1030).

Mr. Rinker's remaining claims against Amori defendants and attorney Marsh are professional negligence, malpractice and negligence, Count I, and breach of contract, Count II. Mr. Rinker contends that his legal malpractice action against all defendants can proceed as both a professional negligence claim and a breach of contract claim. Specifically, he states that an action in legal malpractice can proceed as "causes in legal malpractice negligence as well as legal malpractice breach of contract." (Doc.53 at 7) (citing Coleman v. Duane Morris, LLP, 58 A.3d 833 (Pa.Super. 2012)).

As to the breach of contract claim, Amori defendants argue that "Pennsylvania Courts have repeatedly held that litigants may not simply repackage their allegations of negligence and recast them as a cause of action for breach of contract." They state that Mr. Rinker has "failed to identify the specific terms of the contract or even attach the contract which [he] allege[s] has been breached." (Doc. 44 at 14). Amori defendants essentially maintain that Mr. Rinker alleges a single count of legal malpractice, the gravamen of which is their alleged failure to adhere to professional standards of due care. They indicate that Mr. Rinker's claims for breach of contract and legal malpractice are substantially identical. Thus, the parties dispute whether

Mr. Rinker's legal malpractice claim against Amori defendants sounds in contract or tort, or both causes of action.

Attorney Marsh contends that Mr. Rinker never produced or even asserted any contract they had other than the alleged fee agreement as a basis for any contractual relationship. He also states that the SAC has no allegations of "any casual connection between the alleged contractual obligation of [himself] and the claimed harm sustained by [Mr. Rinker]." (Doc. 46 at 11-12). As such, attorney Mash states that Mr. Rinker's claim for breach of contract against him should be dismissed.

In his SAC, Mr. Rinker alleges "[he] is asserting a professional liability claim against all Defendants." (Doc. 40, ¶ 6). He alleges in Count I that: "Defendants breached their duty of care to Plaintiffs, acting negligently, recklessly, and carelessly"; "Defendants failed to possess and/or exercise the ordinary skill, knowledge and care normally possessed and exercised by members of good standing in the legal profession"; and "As a direct and proximate result of Defendants' negligence, carelessness and recklessness, Plaintiffs suffered actual loss." In Count II, Mr. Rinker alleges that: "Defendants' aforementioned conduct constitutes a breach of the fee and other agreements, and the covenant of good faith and fair dealing, express, implied, and as a matter of law"; and "As a direct and proximate result of the aforesaid breach of the agreement, Plaintiffs have been damaged ...." (Doc. 40, ¶'s 25-30).

The court in Frantz v. Fasullo, 2014 WL 6066020, *4, addressed the

issue presented in the instant case and stated:

> In addition to the express provisions of an attorney-client agreement, "[a]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." Bailey [v. Tucker], 621 A.2d [108] at 115 [Pa. 1993]. Thus, absent allegations that the attorney failed to follow specific client instructions or breached a specific provision of their contract, a client's breach of contract claim against a lawyer "is not a true contract cause of action but sounds in negligence by alleging [that the attorney] failed to exercise the appropriate standard of care." Storm [v. Golden], 538 A.2d [61] at 65 [Pa.Super. 1988]; *see also* Edwards v. Thorpe, 876 F.Supp. 693, 694 (E.D.Pa.1995) ("[W]hen a plaintiff's cause of action is based on the attorney's failure to exercise due care, it will sound in contract only if the attorney fails to follow the client's specific instructions or, by her negligence, breaches a specific provision of the contract.").

Recently, the Third Circuit in New York Central Mut. Ins. Co. v. Edelstein, 2016 WL 374164, *2 __ Fed.Appx. __ (3d Cir. Feb. 1, 2016), stated that:

> The Pennsylvania Supreme Court has recently reiterated how the gist of the action doctrine determines whether a cause of action, although arising from a contractual relationship, sounds in contract or in tort. The Court, in Bruno v. Erie Insurance Company, 106 A.3d 48 (Pa. 2014), explained that, if "the facts of a particular claim establish that the duty breached is one created by the parties *by the terms of the contract*—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract," then the claim should be treated as one for breach of contract. Id. at 68 (emphasis added). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." Id. In sum, a claim sounds in negligence unless it is alleged that the party breached one of the "specific executory promises which comprise the contract." Id. at 70.

The court agrees with attorney Marsh that the allegations in the SAC do

not establish a legal malpractice breach of contract claim as against him since Mr. Rinker fails to adequately allege a breach of a specific instruction or provision of any agreement between the parties. Nor does Mr. Rinker allege that attorney Marsh breached a "specific executory promise" contained in any agreement. Rather, Mr. Rinker's legal malpractice claims against attorney Marsh are based on his failure to abide by the relevant professional standard of care by omitting a rents provision when he drafted the mortgage for Mr. Rinker's commercial property in Monroe County. (Doc. 40, ¶'s 7-12). The court finds that even though Mr. Rinker labels Count II of his SAC as breach of contract against attorney Marsh, the allegations contained in his pleading are more properly asserted as an action sounding in tort rather than contract. *See* Knopick v. Downey, 963 F.Supp.2d 378, 383 (M.D.Pa. 2013); New York Central Mut. Ins. Co. v. Edelstein, 2015 WL 412519 (M.D.Pa. Jan. 30, 2015), affirmed 2016 WL 374164, —Fed.Appx.— (3d Cir. Feb. 1, 2016). "The gravamen of [Mr. Rinker's] allegations is that [attorney Marsh] negligently performed his undertaking as a retained lawyer [by failing to include a rents provision in the mortgage for Mr. Rinker's commercial property] and thus failed to exercise the appropriate standard of professional care." Edelstein, 2016 WL 374164, *3. "Based on the allegations in [his SAC], [Mr. Rinker's] malpractice claim arises from [attorney Marsh's] negligent performance of his contractual obligations and, therefore, sounds in tort." Id. Thus, the gist of the action against attorney Marsh in light of the allegations in the SAC is a claim arising in professional negligence. *See* Edelstein, 2015 WL 412519.

Based on the above, the court finds that Mr. Rinker has stated a legal malpractice tort claim against attorney Marsh and this claim, Count I of the SAC, will **PROCEED**. Attorney Marsh argues that Mr. Rinker's SAC merely states a claim for ordinary negligence as opposed to professional negligence/malpractice against him for his alleged failure to include a rents provision in the mortgage for Rinker's property. However, the SAC alleges legal malpractice against attorney Marsh, the gravamen of which is an alleged failure to adhere to the professional standards of due care of a reasonable attorney. Mr. Rinker has sufficiently satisfied the three prong test stated above for such a claim and his alleged damages are an actual loss. *See* Kituskie, 714 A.2d at 1029; Sokolsky, 93 A.3d at 862. Also, in light of the discussion above, this claim is plausible and has been alleged with the requisite specificity as against attorney Marsh under Fed.R.Civ.P. 8 and 10. *See* Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 176-77 (3d Cir. 2010) ("The complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555). "[A] complaint must allege facts suggestive of [the proscribed] conduct." *Id*. (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 563 n. 8)).

With respect to Mr. Rinker's legal malpractice claim sounding in contract, Count II, the court will **GRANT** the motion to dismiss of attorney Marsh and **DISMISS WITH PREJUDICE** this claim as against Marsh. Since Mr. Rinker has already filed three complaints, it would be futile and unduly

prejudicial to allow him to file a forth pleading to try and properly state a legal malpractice claim sounding in contract against Marsh.

However, with respect to Amori defendants, the court finds that the SAC alleges legal malpractice claims that sound in both contract and tort. Mr. Rinker identifies a specific contractual obligation that attorney Amori allegedly failed to perform and he points to an explicit agreement or instruction that attorney Amori allegedly breached. Specifically, the SAC alleges that around August 2013, Mr. Rinker retained Amori defendants and that after they entered a fee agreement, attorney Amori represented to him that the mechanism to save his property from a tax sale due to delinquency was for Amori defendants to bid on the property at the sheriff's sale on his behalf. (Doc. 40 at ¶'s 13, 16). The SAC also alleges that Mr. Rinker gave attorney Amori $2,000 after he stated that he needed this money to acquire the property back from the sheriff's sale. Mr. Rinker alleges that attorney Amori then breached a specific contractual obligation by failing to attend the sheriff's sale and re-acquire his property as he promised. Mr. Rinker alleges that because attorney Amori failed to attend the sheriff's sale and failed to inform him about it, his property was purchased by a third party at a subsequent Judicial Tax Sale. Thus, Mr. Rinker's malpractice claims against Amori defendants arise from both an explicit agreement or instruction that attorney Amori allegedly breached as well as attorney Amori's negligent performance of his contractual obligations in a manner consistent with his profession. *See* Edelstein, 2016 WL 374164, *3 (the Pennsylvania Supreme Court in *Bruno*

delineated contractual and tort malpractice claims "according to which a claim sounding in contract is founded on the breach of 'specific executory promises'"). Therefore, Mr. Rinker's malpractice claims against Amori defendants theoretically sound in tort and in contract. *Compare* Bruno, 106 A.3d at 70 (PA Supreme Court held that plaintiffs' claim sounded in negligence where plaintiffs "d[id] not allege that [defendant] failed to pay the $5,000 it was obliged to pay by the policy" but rather that the defendant's agents took "negligent actions while performing on defendant's contractual obligations.").

With respect to Mr. Rinker's malpractice claims against Amori defendants theoretically sounding in both contract and tort, the court agrees with Mr. Rinker and finds that he has stated cognizable claims against these defendants based on both theories. Amori defendants state that attorney Amori sent Mr. Rinker a letter and basically told him (Rinker) to pay the real estate taxes on his commercial property to avoid a tax sale. Amori defendants attach a copy of the letter to their brief, (Doc. 44, Ex. B). Specifically, the March 17, 2014 letter states:

> The Judicial Tax Sale for Monroe County is scheduled for sometime in May 2014. The Judicial Sale is seeking to sell this property for the county taxes free and clear of your mortgage. You will need to make some arrangement with the Monroe County Tax Claim Bureau to stave off this judicial tax sale.

Attorney Amori also stated in the letter that he would move forward with the foreclosure action since the bankruptcy court granted Mr. Rinker's motion for relief from the automatic stay in the bankruptcy case filed by the

20

defendants/mortgagors in his Monroe County mortgage foreclosure action, Jon Travis Gilliland and Sable Angelica Machado. Thus, Amori defendants argue that attorney Amori's letter belies the allegations in the SAC and proves that Mr. Rinker fails to establish a cognizable malpractice claim against them.

With respect to his malpractice claims, Mr. Rinker states that the court should not consider the facts and Exhibits Amori defendants submitted which are outside of the SAC since the motion to dismiss was filed under Rule 12(b)(6). Mr. Rinker points out that while Amori defendants' Exhibit B purportedly shows that attorney Amori sent him a March 17, 2014 letter and told him to take care of the outstanding real estate taxes owed on his commercial property and that it was his obligation to avoid the tax sale, this Exhibit contradicts his allegations in his SAC. Thus, he states that "[t]he facts giving rise to that March 17, 2014 correspondence is for discovery whereupon [Rule] 12(b)(6) requires the [SAC's] averments be accepted as true with all reasonable inferences therefrom be adduced in favor of [him] and any missing elements left for discovery." (Doc. 53 at 7). Mr. Rinker moves the court to strike Amori defendants' Exhibits and refrain from considering them with respect to their motion to dismiss his malpractice and breach of contract claims under Rule 12(b)(6). But if they are not stricken, he requests the court to convert Amori defendants' motion into a Rule 56 summary judgment motion and permit him to conduct his own discovery.

Amori defendants are correct that in deciding a Rule 12(b)(6) motion "[a] court may consider an undisputedly authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Miller v. Clinton County, 544 F. 3d 542, 550 (3d Cir. 2008); Pryor, 288 F.3d at 560 ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."). Both the engagement letter, (Doc. 44, Ex. A), and the March 17, 2014 letter attorney Amori sent to Mr. Rinker, neither of which is challenged as to authenticity, are referenced in the SAC and the allegations in the SAC undoubtedly rely upon these documents. In particular, the SAC alleges that around August 2013, Mr. Rinker retained Amori defendants and that after he entered a fee agreement, Amori defendants represented to him that the mechanism to save his property from a tax sale was for Amori defendants to bid on the property at the sheriff's sale on his behalf. (Doc. 40 at ¶'s 13, 16). The SAC also alleges that Mr. Rinker gave attorney Amori $2,000 after he stated that he needed this money to acquire Rinker's property back from the sheriff's sale. Thus, as Amori defendants state, (Doc. 54 at 4), "Plaintiffs have squarely put in dispute the parties' engagement letter as well as the scope of the attorney-client relationship."

Amori defendants argue that their exhibits show that attorney Amori did not breach a specific instruction from Mr. Rinker by failing to attend the sheriff's sale and pay the $2000 Rinker gave him to save Rinker's property from a tax sale. Amori defendants state that their exhibits show attorney Amori told Mr. Rinker in his March 17, 2014 letter to take care of the

outstanding real estate taxes on his commercial property and that it was his obligation to avoid the tax sale scheduled in May 2014. Thus, Amori defendants contend that their evidence demonstrates they did not breach any contractual term or specific executory promise with respect to their representation of Mr. Rinker regarding the foreclosure action in Monroe County Court. Amori defendants' also state that their exhibits show that attorney Amori did not negligently perform his obligations to Mr. Rinker after he was retained and, that he did not fail to exercise the appropriate standard of professional care of a reasonable attorney.

While the engagement letter indicated that the $2000 Mr. Rinker paid to attorney Amori was a retainer to represent him in the foreclosure action and did not address the alleged request for attorney Amori to pay the delinquent taxes owed on Mr. Rinker's property to avoid the sheriff's sale, the court will allow Mr. Rinker's legal malpractice and breach of contract claims, Counts I and II, against Amori defendants to proceed at this early stage of the case and will permit the parties the opportunity to conduct discovery on these claims. Mr. Rinker is entitled to conduct discovery regarding the allegations in his SAC which are contrary to the exhibits submitted by Amori defendants. Amori defendants will then be allowed to re-assert their contentions in a Rule 56 summary judgment motion, if applicable at the appropriate time.

As such, Amori defendants' motion to dismiss Mr. Rinker's malpractice claims sounding in both tort, Count I, and contract, Count II, is **DENIED** and, these claims as against Amori defendants will **PROCEED**.

Finally, all defendants move to dismiss Mr. Rinker's claim for attorney's fees in his SAC. The defendants argue that plaintiffs' pleading contains an improper demand for attorneys' fees contrary to the "American Rule" and, since they are not authorized by any statute or contract, this request for relief should be stricken. Mr. Rinker states that he "voluntarily confine[s] [his] claim for attorneys' fees to those attorneys' fees collectible in the underlying action –not as independently arising from this action." (Doc. 53 at 7). "Absent a relevant federal statute, state rules generally determine the award of attorney fees in diversity cases." Lincoln Nat. Life Ins. Co. v. Snyder, 722 F.Supp.2d 546, 565 (D.Del. 2010) (citing Montgomery Ward & Co., Inc. v. Pac. Indem. Co., 557 F.2d 51, 56–57 (3d Cir. 1977)). "Generally, Pennsylvania adheres to the 'American Rule,' which states that litigants are responsible for their own litigation costs and may not recover them from an adverse party 'unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.'" In re Farnese, 609 Pa. 543, 564, 17 A.3d 357 (2011) (citations omitted). Mr. Rinker has not alleged any express statutory authorization or a clear agreement of the parties entitling the prevailing party in any law suit to attorney's fees. Nor does Mr. Rinker allege any exception to the general rule applies. Thus, the parties in this case are responsible for their own attorney's fees and costs and, Mr. Rinker's claim for attorney's fees in his SAC will be **DISMISSED WITH PREJUDICE**.

## V.    CONCLUSION

Based on the foregoing, plaintiff Michelle Rinker is dismissed from this case with prejudice. Amori defendants' motion to dismiss, (Doc. 43), Mr. Rinker's SAC, (Doc. 40), as to the claim against them in Count III is granted, and this claim against these defendants is dismissed with prejudice. Amori defendants' motion to dismiss, (Doc. 43), Mr. Rinker's SAC, (Doc. 40), as to the claims against them in Counts I and II is denied, and these claims against Amori defendants will proceed. Defendant Marsh's motion to dismiss, (Doc. 45), Counts II and III of Mr. Rinker's SAC is granted and the claims in these counts as against Marsh are dismissed with prejudice. Mr. Rinker's claim contained in Count I of the SAC is allowed to proceed as against defendant Marsh. Mr. Rinker's claims for emotional distress and for attorney's fees in his SAC are dismissed with prejudice. The allegations in the SAC referencing "recklessness" are stricken. Further, it would be futile and unduly prejudicial to all defendants to allow Mr. Rinker an opportunity to file a fourth amended complaint with respect to any of the claims that are dismissed with prejudice. *See* Alston v. Parker, 363 F.3d at 236. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 22, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1293-01.wpd